MINNESOTA MINING AND MANUFAC-
TURING COMPANY, a Corporation of
Delaware, Appellant in No. 75–1559,

v.

BERWICK INDUSTRIES, INC., a
Corporation of Pennsylvania,
Appellant in No. 75–1560.

Nos. 75–1559, 75–1560.

United States Court of Appeals,
Third Circuit.

Argued Jan. 6, 1976.

Decided March 18, 1976.

Hugh J. McMenamin, Henkelman, McMenamin, Kreder & O'Connell, Scranton, Pa., Edward A. Haight, Britton A. Davis, Haight, Hofeldt, Davis & Jambor, Chicago, Ill., Terryl K. Qualey, Alexander, Sell, Steldt & DeLaHunt, St. Paul, Minn., for Minnesota Mining and Manufacturing Co.

Gainsburg, Gottlieb, Levitan & Cole, New York City, James, Silverblatt & Townend, Wilkes-Barre, Pa., for Berwick Industries, Inc.; Samuel Gottlieb, Bernard Beitel, New York City, Arthur Silverblatt, Wilkes-Barre, Pa., of counsel.

Before VAN DUSEN, ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

JOSEPH F. WEIS, Jr., Circuit Judge.

All but one of the machines utilized by the defendant to fashion ribbon into decorative bows were found to infringe upon a patent owned by the plaintiff. On the issue of damages, however, the plaintiff did not fare so well, the award being limited by a determination that laches had been proved. These conclusions reached by the district court have not been demonstrated to be erroneous and we affirm.[1]

Plaintiff Minnesota Mining and Manufacturing Company (3M) holds patents 2,933,223 and 3,112,240. The '223 patent was issued in 1960 and covers a device which constructs decorator ribbon bows such as are frequently seen on gift wrappings. The '240 patent issued in 1963 and encompasses the design of the bows.

Defendant Berwick Industries has been engaged in the manufacture of bows since 1960 and uses Tye-Sil, Wanchek, Camberloc and Bowmatic bow-making machines. Plaintiff asserts that these machines infringe apparatus claims 1, 2, 5 and 17 and method claims 14 and 15 of the '223 patent[2] and that the bows produced infringe the '240 patent.

We need only describe the machines briefly since the district court detailed their characteristics at length in its opinions.

The Wanchek and Tye-Sil machines are of the cam drop-off type. They employ a horizontally movable shuttle which has a one-way ribbon gripper and a ribbon guide.

---

1. *See Minnesota Mining and Manufacturing Co. v. Berwick Industries, Inc.*, 393 F.Supp. 1230 (M.D.Pa.1975); *Minnesota Mining and Manufacturing Co. v. Berwick Industries, Inc.*, 373 F.Supp. 851 (M.D.Pa.1974).

2. Claim 5 is representative of the apparatus claim. It provides:

   "A machine for making decorative bows from a continuous length of ribbon comprising a shaft for receiving and rotatably supporting a supply roll of ribbon, rotatable loop retaining means and ribbon feed means, said retaining means being adapted to retain in fixed position relative thereto ribbon applied thereagainst; said feed means operating to withdraw a continuous length of ribbon from a supply roll mounted on said shaft and successively to apply portions of ribbon spaced along said continuous length against said retaining means successively to form radiating loops of ribbon, said retaining means being caused to rotate between each application of a ribbon portion thereto, said loops thereby being twisted as they are formed and being disposed on different radii."

   Claim 14 is representative of the method claims. It provides:

   "In fashioning a decorative bow from a continuous length of strip material, the steps comprising: grasping a length of strip material adjacent its free end and at a point spaced therefrom, unidirectionally twisting the portion of ribbon between the points where grasped and bringing the strip material at said free end and at said spaced point together in uncreased intersecting face-to-back relation to form a first loop having a first leg adjacent said free end, a second leg adjacent said space point and a smoothly arcuate bight; fastening the legs of said loop together at their point of intersection; grasping said strip material at said point of intersection and at a third point along said length spaced from said point of intersection, twisting the strip material between said point of intersection and said third point unidirectionally in the same relative direction as before and bringing the strip material together at said point of intersection and said third point together at said point of intersection in intersecting face-to-back relation to form a second loop having a first leg which is common with and a continuation of the second leg of said first loop, a second leg adjacent said third point and a smoothly arcuate bight; and fastening said loops together at said points of intersection."

As the shuttle moves forward it pulls ribbon from a supply roll and climbs a cam until it is positioned above a spindle on which three needles are mounted vertically. The shuttle then drops off the cam and impales the ribbon on the needles. As the shuttle moves to the rear to start the process again, the spindle rotates so that the loops of the bow are disposed on various radii. This process repeats itself until a finished bow is formed.

The Camberloc machine is essentially similar to the Wanchek and Tye-Sil machines. The only essential difference is that in the Camberloc the shuttle impales the ribbon on horizontally mounted needles.

The Bowmatic is much more sophisticated. Ribbon is continuously withdrawn from the supply roll by means of a double roller drive and moves forward through a guide. When the ribbon reaches the end of the guide, a cam raises a spindle on which there are vertically mounted needles. The ribbon is impaled by the needles, and the spindle lowers. At its lowest point, the spindle rotates so as to twist the ribbon and dispose the loops on various radii. Ribbon continues to move forward and the process repeats until a finished bow is formed.

After a bench trial, the district court made extensive findings of fact and concluded that Berwick had failed to sustain its burden that claims 1, 2, 5, 14, 15 and 17 of patent '223 were invalid. Finding the requisite equivalency between the Tye-Sil, Wanchek, and Camberloc machines and the apparatus claims of patent '223, the court determined that there was infringement. However, it found no infringement of the apparatus claims as to the Bowmatic, a machine with highly advanced solid state circuitry and tremendous production capacity. The court noted that unlike the mechanism described in the 3M patent, the Bowmatic:

1. causes the ribbon to be continuously withdrawn from a supply source and advanced through the process by a double roller mechanism rather than by a shuttle;

2. does not use a pendulum or cam drop-off to give either horizontal or downward motion to the ribbon—rather, the ribbon moves continuously through guides which regulate the route of travel and do not impart any force to the ribbon; and

3. raises the needles through the ribbon as it is advanced by the ribbon feed means.

The trial court observed that "[c]learly, in the Bowmatic, the feed means simply does not successively apply portions of ribbon to the retaining means" as is required by claim 5. Nor was the Bowmatic the equivalent of the '223 device. "Claim 5, even read broadly, simply does not describe the Bowmatic machine and thus the similarities fall short of equivalency. There are essential differences between the two systems. The Bowmatic performs the same or similar functions as the S–70 and its progeny, but in a substantially different way and thus does not infringe."

In considering the method claims, the court described the operation of the Wanchek and Tye-Sil machines and ruled that they operate in the manner described in claims 14 and 15 of the '223 patent. 3M did not claim infringement by Camberloc in the method claims. The Bowmatic was found not to infringe. The court pointed out that unlike the patented device, the Bowmatic does not *grasp* the ribbon at a spaced point. Rather, the ribbon moves without interruption through guides which do not restrict its forward motion.

The question of patent validity is one of law and is reviewable free of the clearly erroneous standard. On the other hand, the clearly erroneous test governs our scope of review of findings of infringement and equivalence. *Hadco Products, Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 1268 (3d Cir.), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972). As the Supreme Court stated in *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 609–610, 70 S.Ct. 854, 857, 94 L.Ed. 1097, 1103 (1950):

"[a] finding of equivalence is a determination of fact. * * * Like any other

issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience."

This caveat is particularly applicable here because, during the course of the trial, the district judge observed the machines in operation and also viewed motion pictures of them.

■■■ The plaintiff relies upon the fact that only its expert testified upon the alleged infringement of the method claims by the Bowmatic. However, it is axiomatic that the trier of fact is not bound to accept expert opinion, even if it is uncontradicted. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *NBO Industries Treadway Cos., Inc. v. Brunswick Corp.*, 523 F.2d 262 (3d Cir. 1975). In our view, the record does not establish that the district court was clearly erroneous in deciding against infringement by the Bowmatic. Nor can we say that the trial court erred in its conclusions on the other infringement claims and in its decision that patent '223 was valid.

■ The court found that the '240 patent was limited by file wrapper estoppel and invalid on the ground of obviousness. The ultimate question of obviousness is a matter of law, but rests on several basic factual inquiries. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Hadco Products v. Walter Kidde & Co.*, supra.

■ The court found that the James and Wanchek patents formed the scope and content of the prior art, and that the only difference between the Wanchek patent and the 3M bows was the absence of prepunched holes in the ribbon used to form the 3M bows. The court then found that one skilled in the prior art and aware of the

James and the Wanchek patents could easily have made bows described in the '240 patent. "In our view Berwick has proved the 3M '240 patent to be invalid by clear and convincing proof." We find no error in this conclusion and, therefore, it is unnecessary to discuss file wrapper estoppel.

The court determined that 3M was guilty of laches in failing to notify Berwick within a reasonable time of the patents in suit. A brief review of the facts is necessary to appreciate the nature of this defense.

In 1961, employees of 3M, including a co-inventor of patent '223, visited the Berwick plant and observed the company manufacturing bows with an Augsburger machine. This machine, at least arguably, infringed 3M's patent, and the co-inventor sent a detailed report describing the Augsburger's construction and operation to 3M management. Nevertheless, 3M said nothing to Berwick about possible infringement. In fact, 3M entered into an arrangement to sell ribbon to Berwick and to act as its sales agent for bows produced on the Augsburger and on the 3M machine which the defendant leased a few months later. This cooperative arrangement between the two companies ended the following year.

In 1965, 3M was advised that Berwick had contacted Christenson who manufactured Camberloc machines under a 3M license. 3M's patent counsel suggested that a letter be sent to Berwick notifying it of the existence of the patents. The trial court found that Berwick received no such letter.

The defendant, however, embarked upon a program of equipment acquisitions worth about $265,000.00 and expanded its production facilities, including an additional plant on the West Coast. The manufacture of bows soon represented a substantial percentage of Berwick's business. 3M did not notify Berwick of its infringement claims until June 25, 1971. After licensing negotiations failed, this suit was filed in 1973.

■■ 3M countered by showing that it had been pre-occupied with an interference proceeding which lasted from 1962 to 1968. It

cites *Jenn-Air Corp. v. Penn Ventilator Co.*, 464 F.2d 48 (3d Cir. 1972), as authority for its contention that a patent holder need not do battle with more than one infringer at a time. But *Jenn-Air* is distinguishable. In that case, notice had been given to the infringer, and the case stands for the proposition that the patent holder need not *sue* more than one infringer at a time, not that notice might not be required under certain circumstances. As the Court of Appeals for the Sixth Circuit indicated in *American Home Products v. Lockwood Mfg. Co.*, 483 F.2d 1120 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974), laches is an equitable defense, and the *Jenn-Air* exception should not be applied indiscriminately.

■■■ The district court recognized that the burden was on Berwick to prove laches, *Jenn-Air Corp. v. Penn Ventilator Co., supra*; cf. *Churma v. United States Steel Corp.*, 514 F.2d 589 (3d Cir. 1975), and held that it had met that requirement. Our standard of review is set forth in *Churma v. United States Steel Corp., supra*. Length of delay and existence of prejudice are questions of fact. A conclusion that inexcusable delay has occurred requires the application of a legal standard and an exercise of discretion in assessing the equitable circumstances. Under that standard, the district court here was not clearly erroneous in its finding of prejudice to the defendant nor was there an abuse of discretion in the determination of inexcusable delay. Nor did the district court apply an improper legal principle. Berwick's position was unique and did not fall within *Jenn-Air's* holding. The salient factor in this case is that 3M knew of Berwick's infringement in 1961 and remained silent while participating in the development of its business. We do not hold that notice must be given in every case, but we cannot say that the trial court did not properly exercise its equitable powers in light of the factual situation.

1. As to method patents generally, see 1 Deller's Walker on Patents (2d ed.) § 15 at 108ff.

2. Findings 104 and 105 of the district court provide (348a):

■■■ 3M also contends that the trial court erred in assessing damages rather than requiring an accounting. We do not agree. The district judge determined that the issues in the damage phase of the case were relatively simple and that a lump sum royalty award was appropriate. Therefore, he decided that, since ample evidence had been submitted and prejudice would result from further delay, justice called for an expeditious resolution of the issue. We think the record supports this exercise of the trial court's discretion. The damages assessed were based upon a review of the relevant factors and are supported by the evidence produced at the trial.

The court also found that Berwick failed to meet its burden of proving the claims of antitrust violations, implied license and estoppel. We find no error in these determinations.

The judgment will be affirmed.

VAN DUSEN, Circuit Judge (dissenting in part):

I respectfully dissent from the holding of the majority that the defendant's Bowmatic machine did not infringe method [1] claims 14 and 15 of the '223 patent (see pp. 332–333 of the majority opinion).

Claim 14 of the '223 patent states (435a):

"In fashioning a decorative bow from a continuous length of strip material, the steps comprising: grasping a length of strip material adjacent its free end and at a point spaced therefrom, unidirectionally twisting the portion of ribbon between the points where grasped and bringing the strip material at said free end and at said spaced point together in uncreased intersecting face-to-back relation to form a first loop having a first leg adjacent said free end, . . . ."

Claim 15 uses the identical language but inserts the words "of generally conoidal shape" after the words "first loop." [2]

"104. Claims 14 and 15 each recite the steps necessary to form at least two complete loops in the fashioning of a decorative bow from a continuous strip of ribbon. The claims differ in specifying details of the

The district court found that the Bowmatic did not grasp the ribbon by the "ribbon guide although when the needles are unidirectionally rotated, a twist is confined between the needles and the guide."[3] For this reason, the district court concluded (405a):

"The Bowmatic grasps the ribbon at its free end by impalement on the retaining needles but it does not grasp the ribbon at a spaced point. The ribbon in the Bowmatic lies in the ribbon guide but is not grasped by it. This is one of the factors in the Bowmatic machine which permits that machine to achieve incredible speed of production. The Bowmatic does not violate claims 14 or 15."

However, the only expert to testify on the issue of the infringement by the Bowmatic of method claims 14 and 15 of the '223 patent was Dr. Benner and he stated (172a): "My opinion is that all of these machines perform the steps as cited in that method."[4]

With no expert opinion or evidence to support his conclusion and the contrary opinion of Dr. Benner (see note 4), that the ribbon guide of the Bowmatic grasped the strip material "at a point spaced therefrom," I believe the record requires us to reverse the district court conclusion, reached *sua sponte*, that the Bowmatic did not infringe the above-mentioned claims 14 and 15.[5] I am reinforced in this conclusion by observation of the 16 mm. film marked as Exhibits 12B and 16A.

In 7 Deller's Walker on Patents (2d ed.) § 511, page 173, the author states:

"In determining whether an accused device, for instance, infringes a valid patent, resort must be had in the first instance to the words of the claim.[43] If the accused device falls clearly within the claim, infringement is made out. Infringement is generally a question of fact.[44] However, when it appears that extrinsic evidence is not needed to explain the terms of art and a court is able to comprehend what the invention disclosed in a patent is and to determine whether one device infringes on another,

method, i. e., claim 15 adds that the loops are of generally conoidal shape, and that the legs are impaled on a central holding pin. . .

"105. The steps recited in claims 14 and 15 are performed in the 3M hand-powered S–71 machine which is illustrated in the '223 patent. A strip of ribbon is grasped at its free end by impalement on the retaining pin and at a second spaced point by the ribbon guide. When the retaining means is rotated, a unidirectional twist is introduced between the points where the ribbon is confined, and this twist imparts a generally conical shape to the smoothly arcuate bight formed when the free end and the spaced point are brought together. The loop is closed by fastening the second leg thereof to the first leg at their point of intersection by a second impalement of the ribbon on the central holding pin. Repetition of these steps along the continuous length of ribbon forms the bow."

3. Finding 107 continues with this wording (349a):

"The ribbon in the ribbon guide either continues to move forward during impalement and rotation or àt the least it pauses momentarily at the time of impalement of the ribbon by the needles. When the needle spindle of the Bowmatic rises to apply the needles to the ribbon, the two places on the ribbon are then brought together in uncreased intersecting face-to-back relationship to form a generally conically shaped loop with a smooth arcuate bight. The legs of the first loop are fastened together by the impalement of the second leg onto the central holding needles, and subsequent loops along the continuous length of ribbon are formed by a repetition of these steps."

4. "The steps recited in claims 14 and 15 of the '223 patent." Further, at 173a, Dr. Benner said:

"You have the twist again being performed between the point where it grasped on the retaining means and the point grasped up in the ribbon guide, and . . . that rotation introduces the twist in the loop."

5. It is noted that plaintiff's opening brief (p. 26) pointed out that defendant offered no testimony in respect to the method claims and only challenged the validity of such claims in the '223 patent. Defendant did not argue, in its brief or orally, that the Bowmatic did not infringe such claims as pointed out in plaintiff's reply brief at p. 7.

the question of infringement or no infringement is one of law.[45]"

Footnote 45 cites *United States v. Esnault-Pelterie*, 303 U.S. 26, 58 S.Ct. 412, 82 L.Ed. 625 (1938), where the Court said at page 30, 58 S.Ct. at page 414, 82 L.Ed. at page 629:

"We are not unmindful of the rule that where, with all the evidence before the court, it appears that no substantial dispute of fact is presented, and that the case may be determined by a mere comparison of structures and extrinsic evidence is not needed for purposes of explanation, or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the questions of invention and infringement may be determined as questions of law."

This is not a case where there is dependence upon "scientific problems and principles not usually contained in the general storehouse of knowledge and experience," as explained in the language quoted from the *Graver Mfg. Co.* case and relied on by the majority at page 333 of their opinion.[6]

I would vacate that part of the district court judgment in favor of the defendant on the alleged infringement by the Bowmatic and remand for computation of damages resulting from the making on the Bowmatic of the type of bows described in claims 14 and 15 of the '223 patent. In all other respects, I join in the majority opinion.

---

**6.** Also, the *Hadco Products* opinion, cited by the majority, points out at page 1268 of 462 F.2d:

"An exception to this rule [the "clearly erroneous" rule] occurs where the evidence is purely documentary in nature, or where the court actually views the object or device in operation."