Frank E. LAWRENCE

v.

UNITED STATES of America
INTERSTATE COMMERCE
COMMISSION, et al.

Civ. A. No. 80–3321.

United States District Court,
E.D. Pennsylvania.

Nov. 14, 1985.
On Motion for Reconsideration
March 7, 1986.

Lawrence J. Fox, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

James G. Sheehan, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

### MEMORANDUM

SCIRICA, District Judge.

## I. BACKGROUND

A motion for summary judgment has been filed by defendants the United States, the Interstate Commerce Commission (ICC) and William Love, who at the time in question was Assistant Director of the ICC's Office of Consumer Protection. Plaintiff has invoked the jurisdiction of this court

pursuant to the general federal question statute, 28 U.S.C. § 1331 (1980 Supp.); the Mandamus Act, 28 U.S.C. § 1361 (1976); and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1977).

Plaintiff's complaint charges the defendants, along with three other employees of the ICC, with various forms of harassment that led to plaintiff's suffering a heart condition and subsequently retiring on medical disability in August 1977 from his position as an ICC investigator. Plaintiff claims that the harassment began in February 1976, soon after an "unknown source" leaked to the national press, information that plaintiff had supplied to Congress at the request of the Subcommittee on Oversight and Investigations of the Commerce Committee of the House of Representatives. Plaintiff alleges that for thirteen months following the leak, one individual in particular, Anthony W. Bummara, harassed him by directing plaintiff's secretary to (1) keep a record of plaintiff's comings and goings, (2) apprise plaintiff of her conduct, and (3) refuse to do any of plaintiff's typing without first getting approval from Mr. Bummara. Plaintiff also charges that his colleagues were warned they would lose their jobs if they fraternized with him. In addition, plaintiff claims that the other defendants, including the ICC, wrongfully encouraged Mr. Bummara's actions.

Plaintiff's complaint initially sought compensatory and punitive damages for emotional distress, humiliation and embarassment against the individual defendants only, a new position in a federal agency other than ICC, and back pay and benefits "which would have accrued since his forced retirement." In an earlier opinion, Judge Hannum characterized the claims for money damages against the individual defendants as state law actions for intentional infliction of emotional distress and dismissed them as time-barred under the applicable Pennsylvania two-year statute of limitations. *Lawrence v. United States*, 631 F.Supp. 631, 636 (E.D.Pa.1982). Judge Hannum permitted the action to proceed, however, "for non-monetary relief against all defendants under the Administrative Procedure Act and under the Mandamus Act." *Id.* at 639. In a subsequent memorandum and order Judge Hannum granted summary judgment in favor of Mr. Bummara and two other ICC employees, whose recent retirements had made them inappropriate defendants in a mandamus action. *Lawrence v. United States*, 631 F.Supp. 631 at 639 (E.D.Pa.1982).

Today I consider the four arguments raised by the remaining defendants: (1) absence of a case or controversy; (2) estoppel; (3) laches; and (4) failure to exhaust administrative remedies. Finding that plaintiff failed to exhaust his administrative remedies, I grant the defendants' motion.

## II.  DISCUSSION

### A.  Case or Controversy

Defendants' first argument is that plaintiff failed to submit a case or controversy. Pointing to the specific relief sought by plaintiff, *i.e.*, reinstatement to a civil service position with a federal agency other than ICC and back pay, defendants contend that since neither the Mandamus Act nor the APA allows monetary awards or the performance of "discretionary" government acts, plaintiff's claim is merely a request for an advisory opinion. This argument is unpersuasive.

Relying on *Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968),[1] defendants argue that the primary consideration in determining a case or con-

---

1. In particular, defendants focus on the following language:

    Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government.
    *Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968).

troversy question is whether the remedy sought is available through the judicial branch. Although this conclusion may be derived from *Flast v. Cohen,* the clear focus of the Article III, § 2 requirement is on the nature of the claim rather than on the remedy. The purpose of the case-or-controversy requirement is to " 'limit the business of federal courts to questions present-. ed in an adversary context and in a form historically viewed as capable of resolution through the judicial process.' " *GTE v. Consumers Union, Inc.,* 445 U.S. 375, 382, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467 (1980), *quoting Flast v. Cohen, supra.*

The test is "whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citations omitted). Further, I must determine whether the plaintiff "suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 374–75, 78 L.Ed.2d 58 (1983). It is only where these conditions are met and the issues are pressed before the court "with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multi-faced situation embracing conflicting and demanding interests," *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961), that "a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Service Commission v. Wykoff,* 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).

■ In this case, the parties have a real, well-focused controversy, particularly when the alleged facts are viewed for purposes of this summary judgment motion in the light most favorable to plaintiff. *See Con-tinental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). At issue is whether defendants' conduct infringed upon plaintiff's exercise of his First Amendment free-speech rights, and whether that conduct was the cause of the disability that forced plaintiff to retire.

In addition, there is no intrusion by the court into the province of another governmental branch. In passing the Mandamus Act, Congress specifically established a judicial forum for the redress of certain actions by federal officials. Although the offer of employment is discretionary rather than ministerial, and relief under the Act does not extend to the performance of discretionary duties, a mandamus action is not automatically barred here. Mandamus may lie not only to compel ministerial duties, but where, as alleged here, "there has been an action taken by a government official contrary to law and so plainly prohibited as to be free from doubt." *Naporano Metal and Iron Co. v. Secretary of Labor of U.S.,* 529 F.2d 537, 542, (3d Cir. 1976); *see Taylor v. United States Dept. of Labor,* 552 F.Supp. 728, 744–45 (E.D.Pa. 1982), *aff'd mem.,* 725 F.2d 670 (3d Cir. 1983). Even if defendant ICC lacks the power to reemploy plaintiff in a non-ICC position, defendant United States is not necessarily similarly restricted.

### B. *Estoppel*

Defendants also argue that summary judgment should be entered in their favor on three theories of estoppel: judicial estoppel, equitable estoppel and collateral estoppel. Each argument is based on the plaintiff's disability retirement application. On that application, plaintiff wrote: "I suffered. a Myocardial Infarction March 24, 1977. I am undergoing treatment three days a week at a cardiac rehabilitation center. I am unable to carry out the vigorous activity required by my position. Totally disabled March 1977." (Defendants' Exh. "1"—Plaintiff's June 6, 1977 Application for Civil Service Retirement).

■ Defendants' judicial and equitable estoppel theories are grounded on defend-

ants' belief that plaintiff, because of his representation in June 1977, should be precluded from asserting that he is now able to work, and that his disability was brought about by defendants' wrongful acts. These arguments misconstrue the law.

The doctrine of judicial estoppel, as defendants note, prohibits a party from "assert[ing] contrary positions in the same or related proceedings. It is, more properly, a rule which estops a party from 'playing fast and loose' with the courts." *Selected Risks Insurance Co. v. Kobelinski,* 421 F.Supp. 431, 434 (E.D.Pa.1976). The implication in plaintiff's November 1980 complaint that he was at that time able to perform a job other than his old ICC job is not necessarily contrary to his June 1977 statement that he could not perform "the vigorous activit[ies] required by [his old ICC] position," nor is it contrary to the statement in his June 1983 affidavit that he "[had] been at all times since [his] retirement ... physically healthy and able and willing to work except at heavy manual labor jobs or at any job in the Philadelphia Office of the Interstate Commerce Commission." (Plaintiff's Exh. "2") Nor is it contrary to his October 5, 1978 declarations that he resigned from employment as a parking lot attendant because he was "physically unable to keep up," or that he resigned from an automobile salesman position because he "could not take the pressure," and that, therefore, he was not sufficiently recovered to earn a livelihood.[2] (Defendants' Exh. "4") It is entirely possible that plaintiff's condition had improved when he filed suit, and for the purposes of this motion, it must be so assumed.

Furthermore, on this particular issue, plaintiff is not necessarily playing "fast and loose with the courts." In *Selected Risks,* the U.S. Small Business Administration (SBA) initially succeeded in having a claim filed in federal court dismissed for lack of subject matter jurisdiction.[3] When plaintiff refiled the same action in state court, the SBA removed the case to federal district court, and opposed a motion to remand to state court. The court permitted remand, ruling that the SBA, having once opposed district court jurisdiction, was judicially estopped from reasserting it. Not only has plaintiff here stopped short of making contrary arguments, he has not necessarily assumed contradictory positions before this court on this issue. *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510 (3d Cir.1953) can also be distinguished. Plaintiff in *Scarano* sought reinstatement less than thirty days after a jury awarded him damages on his Federal Employers' Liability Act claim of permanent disability. Here, even if plaintiff's representations were contradictory, they were made twenty-two months apart, giving rise to the possibility that he recovered.

In addition, I cannot agree with defendants that "Lawrence's present stance is also at odds with his current acceptance of disability benefits." A retiree's acceptance of a disability annuity should not affect his attempt to redress an alleged violation of his constitutional rights. Nor should the mere receipt of civil service disability benefits prevent an individual from seeking a new job with the government. This practice would frustrate the government's efforts, evidenced by the BRI questionnaire sent to Lawrence nearly fourteen months after his retirement, *see supra,* n. 2, to curtail disability payments to annuitants who are no longer disabled.

Defendants' equitable estoppel argument is based on *U.S. ex rel. K & M Corp. v. A & M Gregos, Inc.,* 607 F.2d 44 (3d Cir.1979), where the court stated that "among the more important requirements of [equitable] estoppel are that the party to be estopped

---

2. These statements were made in response to a Civil Service Commission, Bureau of Retirement, Insurance, and Occupational Health (BRI) questionnaire designed to monitor disability annuitants to see whether they remain disabled.

3. The Middle District of Pennsylvania court, however, specified that its dismissal was without prejudice to plaintiff reinstating its action in the U.S. Court of Claims. *See* 28 U.S.C. § 1346 (1976).

has misrepresented or wrongfully concealed some material fact and that this party acted with the intention that the asserting party rely to his detriment on his misunderstanding." *Id.* at 48. Under this test, defendants' argument fails.

First, plaintiff's failure to assert on his application that the government and its agents had caused his retirement does not necessarily constitute a wrongful concealment of a material fact giving rise to equitable estoppel. In any event, these matters are factual issues that cannot be decided on a motion for summary judgment.

■ Defendants' assertion of "collateral estoppel" also misses the mark. The doctrine of collateral estoppel provides that a

> ... judgment in [a] prior action [between the same parties, but upon a different cause or demand] operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' ... [S]ince the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated.

*Kelly v. Warminster Township Board of Supervisors,* 512 F.Supp. 658, 663-64 (E.D. Pa.1981), *aff'd mem.,* 681 F.2d 806 (3d Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 76, 74 L.Ed.2d 74 (1982), *quoting Sea Land Services v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1973). Defendants contend that because the Civil Service Commission (CSC) determined in 1977 that plaintiff was totally disabled, he is barred "from now contending that he was not disabled" (Defendants' Motion for Summary Judgment at p. 20). This argument, however, fails to consider that the claim raised in plaintiff's complaint was not actually litigated and determined by the CSC in the first proceeding. The question decided by the CSC was whether plaintiff was permanently disabled. The question raised in plaintiff's complaint is whether defendants caused the disability. Since there is no identity of issues, there is no collateral estoppel. *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 588 (3d Cir.1975); *Cf. Covington v. Department of Health & Human Services,* 750 F.2d 937, 943-44 (Fed.Cir.1984); *Gonzalez v. Department of Transportation,* 701 F.2d 36 (5th Cir.1983) (both noting the importance of holding a hearing on the issue of voluntariness of a civil servant's retirement).

## C. Laches

Defendants also contend that plaintiff's failure to file suit until more than three years after his application for disability gives rise to the equitable defense of laches. Defendants note that plaintiff was aware of all the alleged facts surrounding this action when he filed his application and that the ICC would suffer particular prejudice if plaintiff were reinstated with back pay, since the agency, *inter alia,* has made "significant personnel changes" since plaintiff's departure, including hiring someone to fill his position. Accordingly, reinstatement of plaintiff would effectively force the ICC to pay two civil servants for one job. In addition, defendants argue that any trial today would be hindered by the failure of witnesses to remember the incident.

It is well established that two elements are necessary for the defense of laches: " '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *Equal Employment Opportunity Commission v. The Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 80 (3d Cir.), *cert. dismissed,* — U.S. —, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984), *quoting Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Although there may be some instances when laches can be weighed by the court on a summary judgment motion, *e.g., Walker v. McCol-*

*lough,* 257 F.Supp. 560 (E.D.Pa.1966), the "[l]ength of delay and existence of prejudice are questions of fact." *Minnesota Mining & Manufacturing Co. v. Berwick Industries, Inc.,* 532 F.2d 330, 334 (3d Cir. 1976); *see GAF Corp. v. Amchem Products, Inc.,* 570 F.2d 457 (3d Cir.1978), *rev'g* 399 F.Supp. 647 (E.D.Pa.1975).

■ Both parties have filed affidavits [4] raising issues of fact that cannot be decided here. *See Metropolitan Wire Corp. v. Falcon Products, Inc.,* 528 F.Supp. 897, 902 (E.D.Pa.1981); *Anaconda Co. v. Metric Tool & Die Co.,* 485 F.Supp. 410, 427 (E.D.Pa.1980); *Morgan v. Sharon Pennsylvania Board of Education,* 472 F.Supp. 1157, 1160 (W.D.Pa.1979); *Cf. Webster v. Great American Insurance Co.,* 544 F.Supp. 609, 610–11 (E.D.Pa.1982).

### D. *Exhaustion*

■ Defendants' final argument is that plaintiff is barred by the doctrine of exhaustion from seeking a judicial remedy. Defendants argue that plaintiff should have pursued the administrative relief available through either the ICC or the Civil Service Commission.[5] In particular, defendants note that at the relevant time period, there were three administrative procedures by which plaintiff should have sought relief: written ICC procedures for bringing employee grievances, written ICC procedures for effecting and challenging employee disciplinary and adverse actions [6] and CSC provisions for appealing "adverse actions." [7] Plaintiff counters that (1) there is no point in requiring exhaustion since

neither plaintiff's retirement nor his former colleagues' harassment was the type of event that implicates the "adverse action" provisions of the ICC manual or the CSC regulations; (2) exhaustion does not apply to the ICC grievance procedures; and (3) any failure to pursue administrative relief was for good cause, since plaintiff's doctor advised for health reasons against Lawrence's pursuit of either a judicial or administrative remedy. (Plaintiff's Exh. "1"—June 20, 1983 affidavit of Frederick A. Furia, M.D.). For the reasons outlined, I find defendants' exhaustion arguments persuasive.

The Supreme Court has long held that there may be no judicial relief until the prescribed administrative remedy is exhausted. *E.g., Myers v. Bethlehem,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Three policy concerns underlie this judicially-fashioned doctrine:

First, adherence to the doctrine shows appropriate deference to Congress' decision, embodied in statute, that an independent administrative tribunal, and not the courts, should serve as the initial forum for dispute resolution. [citations omitted]

Second, the exhaustion doctrine illustrates respect for administrative autonomy by forbidding unnecessary judicial interruption of the administrative process. This autonomy allows the administrative tribunal to exercise its own discretion, apply its own special expertise, and correct its own errors, thereby pro-

---

4. *See, e.g.,* Defendants' Exh. "6" (March 8, 1983, affidavit from Raymond T. Jones, Assistant Regional Compliance Officer, ICC, outlining, *inter alia,* an increase in the number of ICC investigators employed following plaintiff's departure) and Plaintiff's Exh. "1" (June 20, 1983 affidavit of Frederick A. Furia, M.D. attesting to plaintiff having been given medical advice not to pursue a cause of action with regard to his departure from the ICC).

5. Pursuant to the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7703 (1980), the CSC no longer exists. Its functions have now been delegated to two successor agencies. The CSC's appellate responsibilities, referred to here, are

vested in the Merit Systems Protection Board (MSPB). *See* Section 201 of Reorganization Plan No. 2 of 1978, *reprinted in* 5 U.S.C. § 1101 note (Supp. III 1979); 5 U.S.C. §§ 1201–09 (Supp. III 1979). *See also Atwell v. Merit Systems Protection Board,* 670 F.2d 272 (D.C.Cir. 1981).

6. *See* Defendants' Exh. "5" (Addendum E, "Disciplinary and Adverse Actions," Transmittal Letter No. 123, ICC Manual pp. 22–753—22–765; Addendum F, "Employee Grievance Procedures," Transmittal Letter No. 123, ICC Manual pp. 22–725—22–738, (Feb. 18, 1975)).

7. *See* 5 C.F.R. 752.203 (1977 ed.).

moting administrative responsibility and efficiency and minimizing the frequent and deliberate flouting of administrative processes which could weaken the tribunal's effectiveness. [citations omitted]

Third, the exhaustion requirement fosters judicial economy both by permitting the administrative tribunal to vindicate a complaining party's rights in the course of its proceedings, thereby obviating judicial intervention, and by encouraging the tribunal to make findings of fact on which courts can later rely in their decisionmaking. [citations omitted]

*Republic Industries v. Central Pennsylvania Teamsters,* 693 F.2d 290, 293 (3d Cir.1982).

These policies are so strong that they admit only three exceptions: "(1) when the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury; (2) when resort to the nonjudicial remedy would 'clearly and unambiguously violate statutory or constitutional rights'; and (3) when exhaustion would be futile." *Id.* at 293 (citations omitted). "Moreover, these exceptions apply only in 'extraordinary circumstances.'" *Id.* at 294.

As in the *Republic* case, plaintiff does not assert any of the three exceptions, but instead challenges the general applicability of the exhaustion doctrine to the purported administrative schemes at issue. Accordingly, I must apply a two-part test: 1) whether the purported administrative scheme at issue "is properly an administrative remedy, and, if so, 2) whether the remedy is adequate." *Id.* If the answer to both inquiries is "yes", then the exhaustion doctrine is applicable.

In this case, defendants argue that each of the three administrative schemes offers a remedy. Since any scheme alone is sufficient to give rise to the doctrine of exhaustion, defendants need only show that one of the administrative schemes meets the two-part test.

The Civil Service Commission regulations in effect at the time of plaintiff's separation from the ICC provided that a federal employee "is entitled to appeal to the Commission from an adverse action...." 5 C.F.R. § 752.203 (1977). *See* 5 U.S.C. §§ 7511–7701 (1967). Plaintiff asserts that his separation does not constitute such an "adverse action," and that therefore he has no administrative remedy. This argument may be refuted on three grounds, satisfying the first prong of the *Republic* test.

First, a government-induced separation of an employee, which is in effect what plaintiff alleges here, constitutes an "adverse action," and consequently, implicates the administrative scheme of the CSC. *See Gratehouse v. United States,* 512 F.2d 1104, 1108, 206 Ct.Cl. 288 (1975); *see also Newberger v. United States Marshals Service,* 751 F.2d 1162, 1167 (11th Cir.1985); *Christie v. United States,* 518 F.2d 584, 207 Ct.Cl. 333 (1975). Second, even if the separation does not constitute an "adverse action," challenges to government-induced separations shall be brought in the first instance to Civil Service Commission or its successor agency. *See Newberger v. United States Marshals Service, supra* at 1167–1168; *Gratehouse, supra* at 1108; *Phillips v. Klassen,* 502 F.2d 362, 368 (D.C. Cir.), *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974); *Onnen v. United States,* 524 F.Supp. 1079, 1085 (D.Neb. 1981); *Pascal v. United States,* 543 F.2d 1284, 1288, 211 Ct.Cl. 183 (1976)[8]. Third, defendants' uncontroverted quotations from plaintiff's deposition indicate that plaintiff himself acknowledged the propriety of the CSC remedy. Plaintiff had pursued CSC remedies in the past. More importantly, plaintiff had consulted with the CSC regarding his current allegations and

---

8. *See also Bush v. Lucas,* 462 U.S. 367, 385 n. 26, 103 S.Ct. 2404, 2415 n. 26, 76 L.Ed.2d 648 (1983), wherein the Supreme Court noted:
   Exec. Order No. 10988, § 14, 3 CFR. 521 (1959–1963 Comp.), and Exec. Order No. 11491, § 22, 3 CFR. 861 (1966–1970 Comp.), printed in note following 5 U.S.C. § 7301

[1976], gave all employees in the competitive service the right to appeal adverse actions to the Civil Service Commission, and made the administrative remedy applicable to adverse personnel actions other than removal and suspension without pay.

had been advised by the CSC that he could appeal to that agency. (Defendants' Motion for Summary Judgment at 31–32)

With regard to the second prong of the *Republic* test, *i.e.*, the adequacy of the administrative remedy, I must analyze whether the remedy furthers the three major policies underlying the doctrine of exhaustion. *See Republic, supra* at 295. Initially, it is obvious that requiring plaintiff's use of the administrative scheme here furthers Congress' desire to make the CSC (or the MSPB) the forum of first recourse for a separated employee and to encourage administrative automony through the exercise of its own expertise. To hold otherwise, and thereby sanction plaintiff's bypass of the CSC would undermine Congress' decision to entrust "the Commission with the function of hearing and deciding appeals from assertedly wrongful separations from federal service." *Fitzgerald v. Hampton*, 467 F.2d 755, 760 (D.C.Cir.1972) (emphasis deleted). The CSC and its successor, the MSPB, are specially qualified to regulate the federal competitive service. *See* 5 U.S.C. § 1302 (1967). Moreover, the CSC, unlike the arbitrator in *Republic*, has authority to provide the remedy sought by plaintiff. *See, e.g.*, 5 C.F.R. § 7.3 (giving the CSC power to prescribe regulations authorizing re-employment in a released employee's former agency) [9] and § 5.1(b) (permitting the CSC to vary from "the strict letter of its regulations" when necessary to protect the integrity of the competitive service) (1977).

Not even plaintiff's assertion that an administrative agency lacks the constitutional expertise of a court is persuasive. The mere presence of a constitutional issue does not excuse exhaustion, particularly where the facts here, unlike those in *Republic*, do not concern a "facial constitutional challenge." *Republic, supra* at 296. In *Republic* the court stated that where non-facial constitutional challenges are made, the administrative tribunal is to be given at least the opportunity "either to moot [the] constitutional issues or establish a factual matrix for judicial review." [10] *Id.* This requirement also leads to the conclusion that the CSC remedy furthers the third major policy underlying exhaustion, judicial economy, and completes the application of the two-part *Republic* test.

Finally, plaintiff argues that if, as I have found, the exhaustion doctrine applies to at least one of the administrative schemes at issue, he should nonetheless be excused from it because his "decision not to pursue an administrative remedy [was] for good cause: he feared it might endanger his health." (Plaintiff's Answer to Defendant's Motion for Summary Judgment at 26.) Given the explicit delineation of only three exceptions to the exhaustion rule, and the clear statement that even those exceptions "apply only in 'extraordinary circumstances'", *id.* at 294, plaintiff's argument is not compelling. Even under the lower standard for the application of the exhaustion doctrine set forth pre-*Republic* in *Goodrich v. U.S. Department of the Navy*, 686 F.2d 169, 177 (3d Cir.1982) ("[I]t is within the discretion of the court to waive the exhaustion requirement when application of the doctrine would be unjust."), I cannot hold that requiring plaintiff to exhaust his administrative remedy(ies) is unjust here, especially since the medical doctor's affidavit, on which plaintiff relies to excuse his failure to exhaust, attests also to the medical risk in pursuing a judicial remedy.

## III.  CONCLUSION

In summary, I conclude that at least one of the administrative schemes, the CSC

---

**9.** Although in his complaint, plaintiff sought to be placed in a government agency other than the ICC, he stated in his June 1983 affidavit that "I now feel able to perform duties for any ICC office except the one in Philadelphia." (Plaintiff's Exhibit "2")

**10.** The conclusion that Lawrence should have first presented his constitutional claim to the

CSC is also supported by the Supreme Court's decision in *Bush v. Lucas, supra,* 462 U.S. at 386, 103 S.Ct. at 2415, that "[c]onstitutional challenges to agency action, such as First Amendment claims raised by petitioner, are fully cognizable within [the civil service's administrative] system."

regulations, provides an adequate administrative remedy for plaintiff's claim. Since plaintiff has failed to demonstrate that his case falls into one of the carefully drawn exceptions to the exhaustion doctrine or that application of the doctrine here is unjust, I find that its application here precludes his further pursuit of a judicial remedy. *See Beale v. Blount,* 461 F.2d 1133, 1137 (5th Cir.1972) (The exhaustion of available administrative remedies is a prerequisite to the maintenance of a mandamus action commanding re-employment by an ex-employee of the federal government alleging to be the victim of improper discharge.) *Accord, Bolger v. Marshall,* 193 F.2d 37 (D.C.Cir.1951); *Baskin v. Tennessee Valley Authority,* 382 F.Supp. 641, 647 (M.D.Tenn.1974), *aff'd mem.,* 519 F.2d 1402 (6th Cir.1975); *cf. Holmes v. U.S. Board of Parole,* 541 F.2d 1243, 1247 (7th Cir.1976), *overruled on other grounds, Solomon v. Benson,* 563 F.2d 339 (7th Cir.1977); *Lilienthal v. Parks,* 574 F.Supp. 14 (E.D.Ark. 1983).

## ON MOTION FOR RECONSIDERATION

In his motion for reconsideration of my November 14, 1985 ruling, plaintiff argues that requiring him to exhaust his administrative remedies prior to coming to court is wrong because the doctrine of exhaustion "constitutes an inadequate remedy to prevent irreparable harm," and its application would be "futile and unjust". These contentions lack merit.

The adequacy of the administrative scheme has already been spelled out, and need not be reiterated here. The futility that plaintiff identifies as resulting from his administrative recourse having been time-barred is undercut by provisions in the ICC Disciplinary and Adverse Actions Manual, p. 22–761 (1975), the ICC Employee Grievance Procedures Manual, pp. 22–727–8 (1975) and 5 C.F.R. § 752.203 (1977) that allow for the waiver or extension of time limits for bringing claims. Finally, even accepting plaintiff's implication that the use of "injustice" as an exception to exhaustion was not vitiated by *Republic*

*Industries v. Central Pennsylvania Teamsters,* 693 F.2d 290 (3d Cir.1982), which did not include "injustice" as an applicable exception, *see id.* at 293, the facts in plaintiff's case are clearly distinguishable from the sole example of "injustice" cited by plaintiff. In *Goodrich v. United States Department of the Navy,* 686 F.2d 169 (3d Cir.1982), *cert. denied,* —— U.S. ——, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985), the court held that adherence to the exhaustion doctrine would result in injustice because Goodrich was denied information necessary to effectively prosecute the case by the federal agency that demoted him. Plaintiff has not even claimed he was denied such information here.