William D. ATHAS, William M. Beckley, Clarence J. Brenneise, and Harold E. Wolverton

v.

The UNITED STATES.

No. 405–76.

United States Court of Claims.

April 18; 1979.

Thomas P. Owens, Jr., Anchorage, Alaska, attorney of record for plaintiffs; Owens & Turner, Anchorage, Alaska, of counsel.

Stephen G. Anderson, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This civilian pay case, before the court on the parties' cross-motions for summary judgment, presents questions dealing with alleged procedural irregularities connected with adverse personnel actions affecting plaintiffs' employment rights. Because we find, under the facts of the instant case, that the Government failed to apprise plaintiffs of their right to appeal the adverse actions in question in violation of applicable statutes and agency regulations, we hold that plaintiffs are entitled to be reinstated in their former positions and awarded appropriate back pay.

Plaintiffs, before the adverse actions in question, were employed as civilian administrators in the Alaska Air National Guard. Apparently dissatisfied with the job performance of plaintiffs, the Adjutant Gener-

al of the Guard, Major General William B. Elmore, instituted proceedings "to get their attention." His objective was met.

On January 4, 1972, General Elmore issued to each plaintiff a Notice of Proposed Adverse Action.[1] Just one day later, General Elmore addressed a meeting of technicians at Kulis Air National Guard Base and announced the reductions in grade and position of plaintiffs (including the termination of plaintiff Beckley). Within two days, he removed the remaining three plaintiffs, assigned them to reduced positions elsewhere, and immediately appointed other personnel to fill their prior assignments.

A hearing was scheduled for January 31, 1972, at which time plaintiffs would be given the opportunity to contest the proposed adverse actions. General Elmore was to conduct the hearing.

Prior to the hearing, on January 21, 1972, plaintiffs, through their attorney, made essentially two requests: (1) that the charges in the proposed adverse action be detailed with more specificity to allow them to formulate a meaningful reply and (2) that the hearing be conducted by an impartial hearing examiner.[2] General Elmore denied both requests. The hearing was held, with the General presiding, as scheduled on January 31, 1972.

At the hearing, plaintiffs made replies, both orally and in writing, to the proposed allegations. No witnesses were presented to support the charges. Not one shred of documentary evidence was introduced to support the charges. Yet without more, at the conclusion of the hearing, General Elmore saw fit orally to sustain the charges that he himself had instituted.

On February 2, 1972, a written notice of final decision was issued to plaintiffs by General Elmore declaring that the charges were sustained and the proposed action was warranted.

This notice was issued in accordance with Air National Guard Regulation (ANGR) 40–01, Chapter 7, Section X, which reads in pertinent part:

7–50. NOTICE TO EMPLOYEE. The notice of original decision of an adverse action must include information of the technician's right to appeal in writing, the time limit for filing the appeal, and where he may obtain further information about his appeal rights.

Although the written notice of decision issued to plaintiffs did provide the name, location and telephone number of Mr. Manuel Wallace in the Civilian Personnel Office who had been designated to advise them, it inexplicably failed to advise plaintiffs of their right to appeal and the time limit for exercising such right as clearly mandated by the regulation.

To complicate matters, when plaintiffs' attorney contacted Mr. Wallace for information and assistance in preparation of a possible appeal of General Elmore's decision, Wallace informed him in clear violation of ANGR 40–01, Chapter 7, Section X, that plaintiffs *had no such right.* Section X reads in part:

7–53. RIGHT TO A HEARING: A technician is entitled to a full and fair hearing on his appeal before a hearing committee.

Further muddying the waters, General Elmore also wrote plaintiffs' counsel in answer to his inquiry as to the appropriate appeal procedures stating, "I thought my letter to them and counselling them to perform their new duties was sufficient information as to their status. Hope this will suffice." In other words, not one word about plaintiffs' right to appeal the adverse action or the time limit for perfecting such right was conveyed to plaintiffs as the applicable regulation clearly required. This omission is particularly glaring, in light of the fact that the Government complied with

---

1. Plaintiff Beckley was to be terminated. Plaintiffs Wolverton, Athas and Brenneise were to be transferred to other positions "entailing less responsibility and a concomitant reduction in grade."

2. Plaintiffs' attorney also indicated, in apparent anticipation of an adverse decision by General Elmore, that they would desire to appeal his decision.

the regulation to the extent it provided plaintiffs notice as to where further information could be obtained concerning their appeal rights but inexcusably failed to apprise plaintiffs in writing of their right to and time for filing an appeal as required by the very same sentence of the same regulation.

It is noteworthy that if plaintiffs had been granted the right to appeal the decision of General Elmore, that intermediate decision was still subject to final appellate review by the Adjutant General. In other words, General Elmore who had instituted the adverse actions in the first instance, then sustained the actions in the second instance, would also be the final authority reviewing his own actions in his capacity as Adjutant General.

On April 17, 1972, plaintiffs instituted suit in the United States District Court for the District of Alaska. The complaint named General Elmore as the sole defendant and alleged that he had acted to deprive plaintiffs of their civil rights in violation of 42 U.S.C. § 1983.

During the pendency of this district court action, the Alaska Air National Guard, apparently spurred on by plaintiffs' institution of suit, notified plaintiffs, albeit belatedly, that a hearing to review General Elmore's decision had been granted and that efforts were being made to locate an impartial hearing examiner to conduct the proceeding. Plaintiffs, however, declined the offer since in their district court suit, it had been officially held that they need not exhaust their administrative remedies in order to maintain their suit under 42 U.S.C. § 1983 against General Elmore. The suit was subsequently dismissed without prejudice sometime in 1975.[3]

On October 4, 1976, plaintiffs filed suit in this court seeking reinstatement in their former positions together with back pay.

Plaintiffs' position essentially is based on the premise that the procedures and conduct employed by General Elmore in effecting their termination or transfer was an egregious violation of their rights to procedural due process. Specifically, plaintiffs contend (1) they were never advised of their right to appeal the decision of General Elmore sustaining the adverse actions against them (in fact, they were told they had no such right); and (2) the charges in the Notices of Proposed Adverse Action were so vague and non-specific in violation of 5 U.S.C. § 7512 that plaintiffs' rights to procedural due process were impaired since they were unable to formulate meaningful replies to the charges.

The Government responds that due to the failure of plaintiffs fully to pursue their channels of administrative relief, the doctrine of exhaustion of administrative remedies applies and plaintiffs are precluded, at this juncture, from bringing their claims in this court. Defendant contends that plaintiffs have shown no reason why they should be relieved from pursuing their administrative remedies before instituting suit here.

Plaintiffs counter by stating that they actively tried to pursue their appeal rights, but were told such rights were non-existent. It was not until after plaintiffs instituted suit in district court that defendant offered a hearing to review General Elmore's decision. Thus, plaintiffs conclude that, in the face of the Guard's persistent failure to recognize their appeal rights until *after* they had instituted suit in district court, it would now be inequitable to require them to pursue such administrative remedies.

We hold for plaintiffs.

■ It is, of course, hornbook law that in general employees challenging an adverse action must first exhaust their administrative remedies before turning to the federal courts for relief. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *Gentry v. United States,* 546 F.2d 343, 212 Ct.Cl. 1 (1976); *Razik v. United States,* 525 F.2d 1028, 208 Ct.Cl. 265 (1975). The judicial doctrine of exhaustion

---

3. Apparently due to jurisdictional restraints, plaintiffs had their case dismissed without prejudice in Alaska and elected to file in this court.

of administrative remedies, however, is not absolute and in the discretion of the court, it may be waived when such unusual circumstances exist as to make application of the doctrine unjust. *Bendure v. United States,* 554 F.2d 427, 431, 213 Ct.Cl. 633, 640 (1977).

▌ In this case, we have peculiar circumstances surrounding plaintiffs' adverse personnel actions ·clearly mandating that the requirement of exhaustion be waived. Plaintiffs specifically asked what further appeal rights they had concerning General Elmore's decision. They were incorrectly told by the Chief Personnel Officer that they had none.[4] In such circumstances, plaintiffs' failure administratively to pursue an appeal can be considered the result of the agency's failure timely to apprise them of their appeal rights. Under these facts, our discretion is clearly applicable and plaintiffs' failure to exhaust administrative remedies is not a bar to suit in this court. *See, e. g., Hagarty v. United States,* 449 F.2d 352, 196 Ct.Cl. 66 (1971).[5]

The Government additionally argues that the omission (concerning plaintiffs' appeal rights) in the final notices of decision was merely a "technical omission" amounting to no more than harmless error and affords no basis for overturning the adverse actions.

In support of this argument, the Government takes the position that plaintiffs, on January 21, 1972, evidenced knowledge of their appeal rights thereby rendering any omission of such rights in the final notices of appeal harmless error.[6] Whichever way plaintiffs' remarks may be characterized, it is undisputed that after the final decision of General Elmore had been reduced to writing, plaintiffs were unequivocally told by the Chief Personnel Officer that they had *no* appeal rights. In light of such action by the Government, it is obvious plaintiffs

were misled as a direct result of the Government's conduct in clear violation of ANGR 40–01. Under such circumstances, we cannot say the Government's omission of plaintiffs' appeal rights in the final notices of decision, coupled with a statement by the Government's Chief Personnel Officer that there was no such right, was harmless error.

▌ Finally, the Government argues that since plaintiffs later declined an offer of a hearing which was to have reviewed General Elmore's decision, they cannot now complain of prejudice resulting from deficient notice. What defendant overlooks is the fact that such a hearing was not offered until plaintiffs had instituted suit in the district court, approximately two and one-half months after their adverse actions had become final. Apparently realizing the error it had committed, the Government attempted belatedly to rectify its mistake.

"The consequences of a refusal to accept an agency's offer to remedy a possible, though disputed, procedural error will depend on the timing and nature of the offer." *Gratehouse v. United States,* 512 F.2d 1104, 1109, 206 Ct.Cl. 288, 298 (1975). However, such an offer must first be made within a "short and reasonable" time. *Id.*

In the instant case, the agency's offer of a hearing was clearly not made within a "short and reasonable" time. Plaintiffs, as the direct result of defendant's representations materially changed their positions in reliance on such statements. They went to the time and expense of instituting suit in federal district court to vindicate their rights in the belief that no further forum of administrative appeal was available to them. On this basis, it would be inequitable to require that plaintiffs, whose actions were precipitated by defendant's failure to inform them of their rights, be required to

---

4. *See* 5 U.S.C. § 7701; 752 Federal Personnel Manual § 202(f); 40–01 of the Air National Guard Regulations. All the foregoing set forth in detail an agency's duty to inform an employee of the right to appeal a personnel action.

5. *Compare Ainsworth v. United States,* 180 Ct.Cl. 166 (1967) *and Morelli v. United States,*

161 Ct.Cl. 44 (1963) *and Cunningham v. United States,* 161 Ct.Cl. 82 (1963) *and Mallow v. United States,* 161 Ct.Cl. 207 (1963) *with Grover v. United States,* 200 Ct.Cl. 337 (1973).

6. See n. 2, *supra.*

"drop everything" and return to the agency.[7]

The Government, in essence, is attempting to benefit from its own shortcomings. On one hand, the Government argues that plaintiffs be required fully to pursue their administrative appeals. But on the other hand, the Government does not acknowledge the fact that plaintiffs' failure so to do was because the Government, in derogation of its own regulation, failed to apprise plaintiffs of such a right. Common sense and fairness dictate that one should not be able to benefit from his own violation of regulations.

■ Since we find the Government failed to follow its own procedures, we need not consider plaintiffs' other arguments. Such a defect renders an adverse personnel action *void ab initio*. *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Jones v. United States,* 203 Ct.Cl. 544 (1974); *McKamey v. United States,* 198 Ct.Cl. 28, 458 F.2d 47 (1972).

Plaintiffs' contention as to the lack of specificity in the Notices of Proposed Adverse Action, while not necessary to our decision, merits some comment. The charges drawn up by General Elmore are replete with statements such as "failure to display a high degree of professionalism"; "poor working relationships and unprofessional attitudes"; and failure to "improve your awareness of your responsibilities to me [General Elmore]." As a result, plaintiffs in preparing their replies to the Notices of Adverse Action asked for more detail in the nature of names, dates, and specific incidents in order that they could respond in a meaningful fashion to the

charges. General Elmore, although he testified he had documented proof of the various allegations against plaintiffs, never displayed his proof or afforded the technicians an opportunity to controvert such evidence. For example, in a deposition before the district court, in response to a question as to why he didn't give such evidence to Plaintiff Brennaise, General Elmore replied "the size of the document" prevented him from so doing.

It is interesting to note that the defendant has chosen not to contest the allegations of plaintiffs' in this regard, but rather has interposed the defense of exhaustion of administrative remedies. Such a tactic can perhaps be construed as an implicit admission of plaintiffs' allegations, but as discussed *supra,* we need not resolve such contentions. What is important to note is the cavalier attitude displayed by General Elmore with respect to plaintiffs' procedural rights. He allegedly had specific information as to the charges which he arbitrarily refused to turn over to plaintiffs in order that they could prepare appropriate replies. General Elmore's conduct in failing to apprise plaintiffs of such evidence (in spite of having been counselled to show them the material by his Chief Personnel Officer) displayed, at the bare minimum, a remarkable lack of sensitivity to the procedural due process rights of plaintiffs.

In summary, we hold that plaintiffs, under these facts, were not required to exhaust their administrative remedies due to the Government's failure to apprise them of their right to appeal their adverse actions. Such a failure, in violation of applicable agency regulations, renders the action of the agency to terminate or reduce in grade

---

7. Plaintiffs' refusal of the hearing was further justified in light of the district court's order which stated they need not exhaust their administrative remedies in order to maintain their § 1983 suit. While perhaps wrongly construing this to mean no exhaustion was required in their later suit filed under the Back Pay Act, 5 U.S.C. § 5596, this factor indicates that plaintiffs' actions were reasonable and not an arbitrary denial of the Government's offer. Closely related to the above is defendant's assertion

that plaintiffs' claim is barred by laches. The large bulk of time between February 2, 1972 (when plaintiffs' claims accrued) and October 4, 1976 (when the petition in the instant case was filed) was taken up by plaintiffs' litigation in district court. Since plaintiffs were diligently pursuing their rights, the doctrine of laches would be inappropriately applied in the instant case. *See Kowal v. United States,* 412 F.2d 867, 188 Ct.Cl. 631 (1969).

the positions of plaintiffs void. We therefore order that plaintiffs be reinstated in their former positions and awarded appropriate back pay.[8]

Accordingly, upon careful consideration of all the parties' submissions and with oral argument, defendant's cross-motion for summary judgment is denied. Plaintiffs' cross-motion is granted, and the case remanded to our Trial Division for proceedings in accordance with Rule 131(c)(2).

---

**8.** The Government suggests that we return the case to the administrative agency to develop a record in order that this court can make a reasonable review of the merits. Because we decide the case on procedural grounds, there is no need to return the case for further action.