**Clifton L. GOODRICH, Petitioner,**

v.

**U. S. DEPARTMENT OF THE NAVY and Merit Systems Protection Board, Respondents.**

**No. 81–1344.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 30, 1982.

Decided Aug. 4, 1982.

---

Charles A. Hobbie, Staff Counsel, Washington, D. C., Gay Snyder, Staff Counsel, New York City, James R. Rosa, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., for petitioner.

W. Hunt Dumont, U. S. Atty., Jerome B. Simandle, Asst. U. S. Atty., Trenton, N. J., M. Susan Burnett, Trial Atty., Litigation, Dept. of the Navy, Washington, D. C., for respondents.

Before GIBBONS, MARIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case comes before us on a petition for review of a final order of the Merit Systems Protection Board (MSPB) dismissing petitioner's appeal for lack of subject matter jurisdiction.[1] We set aside the MSPB's decision that it had no jurisdiction and remand to the MSPB for further proceedings.

### I.

The petitioner, Clifton L. Goodrich, is a Grounds Foreman at the Earle Naval Weapons Station in Colts Neck, New Jersey. On January 23, 1980, Goodrich received a memorandum notifying him that his position was being downgraded from Grade 5, Step 5 to Grade 2, with no step, effective January 27, 1980. Attached to the memorandum was a copy of Standard Form 50, Notification of Personnel Action, which described the classification change and notified Goodrich that he was entitled to grade and pay retention for a two year period until January 26, 1982. No reason for the reclassification was given in either the memo or Standard Form 50.

On February 8, 1980 Goodrich appealed his reclassification to the MSPB. On May 16, 1980, at a hearing limited to the issue of the MSPB's jurisdiction,[2] Goodrich argued first, that the action against him constitut-

---

1. The Court of Appeals has jurisdiction pursuant to 5 U.S.C. § 7703 (1976), which provides:

 Judicial Review of Decision of the Merit Systems Protection Board

 (a)(1) Any employee ... adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision. . . .

 (b)(1) ... a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals. . . .

28 U.S.C. § 2342 (Supp.1982) provides:

 The Court of Appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

 \* \* \* \* \* \*

 (6) all final orders of the Merit Systems Protection Board except as provided for in section 7703(b) of Title 5.

2. Under 5 C.F.R. § 1201.56(a)(2), Goodrich, as the appellant, bore the burden of proof as to jurisdiction.

ed an "adverse action" which was appealable under 5 U.S.C. § 7513(d)[3]; second, that the agency had committed a prohibited personnel practice under 5 U.S.C. § 2302(b) by failing to provide him with either the procedural protections of § 7513 or the information relied on by the agency in making the reclassification decision; and third, that he was not given adequate notice as to the reasons for his reclassification and was thereby precluded from opposing it. *See* Admin. Record at 42–43. The Department of the Navy (the agency) contended that it was ordered to undertake the reclassification, along with other classification actions, as a result of a directive from the agency's Personnel Management Evaluation Office. Goodrich was entitled to retained grade and pay, and the agency argued that the downgrading was therefore not an adverse action. The MSPB's Presiding Official on June 4, 1980 entered a decision dismissing the appeal for lack of jurisdiction on the ground that a reclassification with retained grade and pay is not an adverse action and is not appealable to the MSPB under 5 U.S.C. § 7513. The MSPB decision relied on section 5366(b), which provides:

> For purposes of any appeal procedures . . . or any grievance procedure negotiated under the provisions of chapter 71 of this title—

> (1) any action which is the basis of an individual's entitlement to benefits under this subchapter, and

> (2) any termination of any such benefits under this subchapter,

> shall not be treated as appealable under such appeals procedures or grievable under such grievance procedures.

5 U.S.C. § 5366(b).[4] Goodrich thereupon filed a petition for review with the MSPB's Office of the Secretary, which on October 6, 1980 entered an order denying the petition.[5] On February 17, 1981 Goodrich wrote to the MSPB requesting that it reopen his case because the agency had denied him due process and had deliberately withheld information from the Presiding Official at Goodrich's hearing before the MSPB. App. 2. The MSPB responded by letter on May 13, 1981, informing Goodrich that its October 6, 1980 Order was final. App. 6. Thereafter, Goodrich on March 3, 1981 filed his petition for review in this court.[6]

## II.

The critical issue involved in this appeal is whether the MSPB properly determined that it was without jurisdiction to consider an appeal from an agency decision to downgrade an employee, when the employee is entitled to retained grade and pay. Since a federal employee's procedural rights are

---

**3.** 5 U.S.C. § 7513(d) provides:
(d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board. . . .
By virtue of 5 U.S.C. § 7512, employees who are reduced in grade have the right to appeal created by § 7513(d):
§ 7512 This subchapter applies to—
(1) a removal;
(2) a suspension for more than 14 days;
(3) a reduction in grade;
(4) a reduction in pay; and
(5) a furlough of 30 days or less[.]

**4.** Since the MSPB decided that the matter was not within its appellate jurisdiction, it found it unnecessary to determine whether or not a prohibited personnel practice has occurred. Admin.Record at 43.5.

**5.** 5 C.F.R. § 1201.114 (1982) provides that any party to an MSPB proceeding may file a Petition for Review with the Secretary. The MSPB may grant a petition for review when it is

established that (a) new and material evidence is available that, despite due diligence, was not available when the record was closed; or (b) the decision of the presiding official is based on an erroneous interpretation of statute or regulations. 5 C.F.R. § 1201.115. The MSPB found that Goodrich's petition for review did not meet the criteria of § 1201.115 and it therefore denied the petition. App. 51.

**6.** On July 10, 1981 Goodrich moved to amend his petition for review filed in this court to include the MSPB's failure to reconsider his case. Over the respondent's opposition, on September 17, 1981 we granted Goodrich's motion. On March 17, 1982 Goodrich notified this court that he had retained counsel. We granted leave for Goodrich's attorney to file a supplemental brief and specifically requested that the brief comment on the effect of *Atwell v. MSPB*, 670 F.2d 272 (D.C.Cir.1981), which was decided after the initial briefing was completed.

governed in part by the nature of the agency action taken against him, we must examine the reasons behind the downgrade of Goodrich's position.

### A.

The classification of a position[7] is the standard by which an employee's compensation, benefits and other personnel decisions are made. Under the Civil Service Reform Act of 1978 (the Act), a federal agency is allowed to change the government service grade of positions within its administration. 5 U.S.C. § 5107. Where a position is lowered in grade through no fault of an employee, however, the Act permits the employee to retain the higher grade for a two year period for the purpose of determining compensation and fringe benefits. 5 U.S.C. § 5362.[8] In addition, at the end of the two year period, pursuant to 5 U.S.C. § 5363, the employee is entitled to retain the basic rate of pay of his former position.[9] Although the downgraded employee retains

his basic rate of pay, he does forego periodic salary increases and other benefits enjoyed by employees at the former grade of his position.

In *Atwell v. MSPB*, 670 F.2d 272 (D.C.Cir. 1981), the District of Columbia Circuit held that Congress intended to preclude appeals to the MSPB of individual downgradings following reclassification where grade and pay retention are available to the employee. *Id.* at 282. The court, after conducting a thorough examination of the statutory scheme of the Act and its legislative history, concluded that the Act expanded the pay and grade retention benefits which were available prior to the Act, and as a *quid pro quo* for these rights, Congress intended to eliminate the right of downgraded employees to appeal the individual downgrading decision. *Id.* at 279.[10]

The *Atwell* decision construed two arguably conflicting provisions of the Act. Section 7512 explicitly provides that reductions

---

7. Positions in the federal workforce are first classified into groups according to similarities in the kind of work, level of difficulty and responsibility and qualification requirements. 5 U.S.C. § 5102(a)(4). All classes of positions are then divided into grades, which include positions in different subject areas of work, but similar with respect to level of difficulty, responsibility and qualification requirements. 5 U.S.C. § 5102(a)(5).

8. Section 5362 provides:
 (a) Any employee—
 (1) who is placed as a result of reduction-in-force procedures from a position subject to this subchapter to another position which is subject to this subchapter and which is in a lower grade than the previous position, and
 (2) who has served for 52 consecutive weeks or more in one or more positions subject to this subchapter at a grade or grades higher than that of the new position,
 is entitled to the extent provided in subsection (c) of this section, to have the grade of the position held immediately before such placement be considered to be the retained grade of the employee in any position he holds for the 2-year period beginning on the date of such placement.
 (b)(1) Any employee who is in a position subject to this subchapter and whose position has been reduced in grade is entitled, to the extent provided in subsection (c) of this section, to have the grade of such position before reduction be treated as the retained

grade of such employee for the 2-year period beginning on the date of the reduction in grade.

9. Under 5 U.S.C. § 5363(b), however, the employee's retained pay cannot exceed 150% of the maximum rate of basic pay for the grade of the employee's position after reclassification.

10. Regardless of grade and pay retention, an employee can appeal the classification decision to the Office of Personnel Management. 5 U.S.C. § 5366(a) provides:
 (a)(1) in the case of the termination of any benefits available to an employee under this subchapter on the grounds such employee declined a reasonable offer of a position the grade or pay of which was equal to or greater than his retained grade or pay, such termination may be appealed to the Office of Personnel Management under procedures prescribed by the Office.
 (2) Nothing in this subchapter shall be construed to affect the right of any employee to appeal—(A) under section 5112(b) or 5346(c) of this title, or otherwise, any reclassification of a position; or
 (B) under procedures prescribed the Office of Personnel Management, and any reduction-in-force action.
 *See Atwell v. MSPB*, 670 F.2D at 280 n.13. *See also* 5 C.F.R. § 511.607 *et seq.* (1982).

in grade are appealable actions. 5 U.S.C. § 7512. *See* note 3, *supra*. Section 5366(b), however, provides that "any action which is the basis of an individual's entitlement [to grade and pay retention benefits] ..." is *not* an appealable action. The *Atwell* court reconciled these two provisions by reading section 5366 as a limitation on section 7512(3):

> [T]he effect of section 5366 is to preclude individual appeals of downgradings made pursuant to position classifications. We conclude that, where pay and grade retention are provided, the downgrades suffered by petitioners are not the sort of "reductions in grade" contemplated under section 7512(3).... [W]e believe that the Congress intended that only those reductions that do not give rise to retention benefits should be appealable.
>
> Accordingly, a more accurate phrasing of section 7512(3) to achieve this end would have been "reduction in grade without grade and pay retention."

670 F.2d at 286. The court thus held that the MSPB had no jurisdiction to hear an appeal by individual employees whose grades were reduced as a result of reclassification and downgrading. While we agree with the analysis and construction of the Act reached by the court in *Atwell*, it does not control this case. The *Atwell* case dealt with the reclassification and downgrading of employees because of the application of revised classification standards or the correction of classification errors. According to the court's examination of the legislative history and construction of the Act, such actions are governed, not by the appellate procedures established by section 7512(3), but by the explicit limitation of section 5366.

In this case, however, Goodrich argues that he was reduced in grade pursuant to a reduction in the agency's workforce, and not because of a correction in his classification. Such actions against an employee, Goodrich contends, in spite of retained grade and pay, give rise to a right of appeal to the MSPB in the affected employee. The *Atwell* court itself recognized that grade retention benefits alone are not dispositive of the existence of a right to appeal a downward classification to the MSPB, 670 F.2d at 280, and that, under other circumstances, the MSPB might have jurisdiction over such an appeal. We now turn to those other circumstances.

B.

Section 5366(a)(2) provides:

> (a)(2) Nothing in this subchapter shall be construed to affect the right of any employee to appeal—
>
> \* \* \* \* \* \*
>
> (B) under procedures prescribed by the Office of Personnel Management, *any reduction-in-force action.*

5 U.S.C. § 5366(a)(2) (emphasis added). In addition, section 5366(b), the statutory provision at issue in *Atwell*, explicitly excludes appeals from reduction-in-force actions from its limitation on appellate rights.[11] The construction of § 5366(b) reached in *Atwell* thus does not control an individual's right of appeal to the MSPB when he is affected by a reduction-in-force.

There is no dispute that an employee reduced in grade due to a reduction-in-force may be entitled to retention of his grade and pay in the same manner as an employee demoted due to a classification correction. 5 U.S.C. § 5362.[12] The jurisdiction of the

---

11. Section 5366(b) provides:

> (b) for purposes of any appeal procedure (*other than those described in subsection (a) of this section*) ...
> (1) any action which is the basis of an individual's entitlement to benefits under this subchapter, and
> (2) any termination of any such benefits under this subchapter,
> shall not be treated as appealable....

(Emphasis added). Since reduction-in-force actions are specifically described in subsection (a) of § 5366, they are excluded from application of subsection (b).

12. Section 5362 provides:

> (a) Any employee—
> (1) who is placed *as a result of reduction-in-force procedures* from a position ... to another position ... and which is in a lower grade than the previous position, and

MSPB over an appeal from a reduction in grade depends, therefore, not on the availability of grade and pay retention, but on the nature of the demotion action taken against the affected employee.

Under the construction reached in *Atwell,* Congress intended that the expanded pay and grade retention benefits available to employees reduced in grade operate as a *quid pro quo* for appeals by employees whose demotion resulted from classification corrections. Employees demoted as a result of reduction-in-force, however, retain their right under Section 7512 to appeal to the MSPB.

### III.

The factual question remains whether Goodrich was reduced in grade pursuant to a reclassification or a reduction-in-force. In his supplemental brief on appeal, Goodrich vigorously argues that he was demoted due to a gradual erosion of his duties resulting in classification of his position at a lower grade. (Supplemental Brief at 7–9). He contends that, according to agency regulations, reduction-in-force procedures must be followed by an agency when it reduces an employee in grade for reasons of reorganization due to erosion of the workforce. The agency concedes that a reduction-in-force demotion gives rise to a right of appeal to the MSPB, and does not deny that Goodrich was demoted due to a reduction-in-force (Respondents' Brief at 14), but instead urges this court to hold that Goodrich did not raise his reduction-in-force argument at the administrative level, and that he is therefore precluded from relying on that argument in this court. We address each of these contentions in turn.

### A.

When the MSPB held the hearing on the jurisdictional issue, the only evidence before it relevant to the nature of the reasons for Goodrich's downgrade was the Standard Form 50, attached to the memorandum to Goodrich informing him of the classification change. The Standard Form 50 contains the cryptic statement "action taken in accordance with NFD LTR of 2 Nov. 1979." Other than that one phrase, there is no indication in the information supplied to Goodrich as to the reasons for the downgrade. After Goodrich filed his appeal with the MSPB, the Presiding Official sent the agency a Request for the Production of Documents which specifically demanded "evidence supporting the action taken" and "response to material issues raised by the appellant." Admin. Record at 22–23. The agency accordingly sent to the MSPB a copy of Goodrich's job description, the Standard Form 50, and an unsigned, undated document titled "Case No. 17." This document in its entirety states:

> The Station response states the review and need for this position would be determined as part of the position management evaluation scheduled for the Public Works Department in August and September 1979. As noted in our comments for Corrective Action No. 2, the on-site visit found no action has been initiated to conduct the scheduled reviews. Unless the position management review of the Public Works Department is presently being conducted, the job description for this position must be amended to reflect the severe reduction in the scope and size of the workforce and classified to the Foreman Grade Level, WS–02. A copy of the

(2) who has served for 52 consecutive weeks or more in one or more positions subject to this subchapter at a grade or grades higher than that of the new position, is entitled ... to have the grade of the position held immediately before such placement be considered to be the retained grade of the employee in any position he holds for the two year period beginning on the date of such placement.

(b)(1) Any employee ... *whose position has been reduced in grade* is entitled ... to have

the grade of such position before reduction be treated as the retained grade of such employee for the two year period beginning on the date of the reduction-in-grade. . . .

5 U.S.C. § 5362 (emphasis added). By separating grade retention because of reductions-in-force from other types of entitlement to grade retention, Congress clearly distinguished between the grade retention rights of employees demoted for different reasons.

amended and classified job description must be forwarded to this office within 45 days. Unless the amended and classified job description is received within 45 days, we will be required to certify the classification of the position based on the facts contained in the personnel management evaluation report.

Admin. Record at 31. The document does not mention either Goodrich or his position; neither does the document indicate that a reclassification of any position would in fact occur. The document makes a request for the "amended and classified job description" and refers to undisclosed facts "contained in the personnel management evaluation report." In a cover letter accompanying these documents, the agency asserted that there were no other relevant documents related to Mr. Goodrich's downgrade. Admin. Record at 24. There did exist other agency documents responsive to the Presiding Official's request for evidence supporting the action taken, which, perhaps through inadvertence, were not disclosed. In his February 17, 1981 letter to the MSPB requesting that the MSPB reopen his case, Goodrich referred to documents which were given to him in late January 1981.[13] One of those documents, a brief, undated and unsigned report, is captioned with Mr. Goodrich's name, title and position number. This report states:

> This position is located in the General Trades Branch, Maintenance and Utilities Division.... [T]he number of employees supervised by the incumbent has decreased substantially, and most of the grounds work formerly under the incumbent's supervision is being performed by outside contractor personnel. The severe reduction in the scope of work and size of work force supervised requires downgrading this position....
>
> Upon review of the supervisory structure and size of the Maintenance and Utilities Division work force, the need for this position is seriously questioned.... Prior to any reclassification action on this

> position, a review of the Maintenance Division functions and supervisory structure should be made to determine whether the work and the employees supervised by the incumbent can be absorbed by another supervisor, and the Grounds Foreman position abolished.
>
> Submit a report of the results of the review and the corrective action taken on this position to this office for review.

App. 7. In an apparently later document, the agency mentions that corrective action was taken related to "Case No. 17" to reclassify the position to Grounds Foreman, Grade 2 to reflect the "severe reduction in the scope and size of the workforce." App. 8. At the administrative hearing, however, the agency's representative, Mr. Neral, implied that the downgrading action was taken to correct Goodrich's classification, rather than because of a reduction-in-force:

> Mr. Neral: Well, my case is, I believe relatively short; consistent with the provisions of the law, we were subjected to an inspection by a higher level of Navy authority. As a result of that inspection [the] ... Office of the Assistant Secretary of the Navy, Branch Office in Philadelphia, identified as the Personnel Management Evaluation Office. They identified during this inspection a number of corrective actions that had to be taken, some of which were related to classification actions. This took place in calendar year '79.
>
> One of the corrective actions taken was related to the position held by Mr. Goodrich.

Transcript of Hearing at 22–23. This statement during the hearing was the agency's only indication on the record as to the reasons for Goodrich's downgrade.

From the evidence which was omitted from the administrative record, it appears that Goodrich was downgraded due to an erosion away from his position of supervisory and other responsibilities, rather than

---

**13.** There is no indication in the record as to how Goodrich came into possession of these documents.

due to an erroneous classification of his position. Goodrich characterizes a downgrading of this type as due to a reduction-in-force.

### B.

The Act, although differentiating between classifications and reductions-in-force, does not precisely define the latter term.[14] The regulations promulgated by the Office of Personnel Management pursuant to 5 U.S.C. § 3502 of the Act, describe when an agency must follow reduction-in-force procedures:

> Each agency shall follow this part when it releases a competing employee from his/her competitive level by separation[,] demotion, furlough for more than 30 days, or reassignment requiring displacement, when the relief is required because of lack of work, shortage of funds, reorganization, *reclassification due to change in duties*, or the exercise of reemployment rights or restoration rights.

5 C.F.R. § 351.201(a) (1982) (emphasis supplied).[15] The regulations further define a reorganization for reduction-in-force purposes, as "the planned elimination, addition, or redistribution of functions or duties in an organization." 5 C.F.R. § 351.203(f) (1982). The Federal Personnel Manual describes when reduction-in-force procedures apply to various types of downward classification:

> c. Reclassification, Erosion and Reduction-In-Force.
>
> *General.* When the grade of a position is reduced through the classification process the agency determines the reason for the change.
>
> (a) *Change in duties.* If the record shows that the grade of a position must be reduced because of a deliberate change in duties and this causes an employee to be released from his or her competitive level through separation, demotion, furlough for more than 30 days, or reassignment requiring displacement, reduction-in-force procedures are applied to the employee who must be released.
>
> (b) *Reclassification.* If the record shows that the grade of a position must be reduced because of the application of new classification standards or the correction of classification error, reduction-in-force procedures are not applied.
>
> (c) When the downward reclassification of a position is due to duties gradually drifting away from a position by a slow erosion process, reduction-in-force procedures are applied.

Fed. Personnel Manual, Ch. 351, ¶ 3–5c (July 7, 1981). Thus, if Goodrich is correct that he was reclassified as a result of a gradual erosion of his responsibilities or deliberate reorganization of his duties, reduction-in-force procedures should have been used to effect his demotion.

These reduction-in-force procedures provide that the employee be notified at least thirty full days in advance of the effective date of his release from his competitive position. 5 C.F.R. § 351.801 (1982). The notice must specifically describe:

> The action to be taken and its effective date; the employee's competitive area, competitive level, subgroup, and service date; the place where the employee may inspect the regulations and records pertinent to this case; the reasons for retaining a lower-standing employee in the same competitive level ...; the reasons for retaining a lower-standing employee

---

14. 5 U.S.C. § 5361(7) states that "reduction in force procedures" means "procedures applied in carrying out any reduction in force due to a reorganization, due to lack of funds or curtailment of work or due to any other factor."

15. The Federal Personnel Manual gives this definition of reduction-in-force:

> An agency has a reduction-in-force when it releases an employee from his or her competitive level by separation, demotion, furlough

> for more than 30 days or reassignment requiring displacement, when lack of work or funds, reorganization, reclassification due to a change of duties, or the need to make a place for a person exercising reemployment or restoration rights requires the agency to release the employee.

Federal Personnel Manual, Ch. 35a, ¶ 1–2a (July 7, 1981).

in the same competitive level for more than 30 days . . . ; *and the employee's right to appeal to the Merit Systems Protection Board under the provisions of the Board's regulations.*

5 C.F.R. § 351.802 (1982) (emphasis added). Employees who face a reduction-in-force action also have certain rights to compete for retention of their competitive level, 5 C.F.R § 351.402 (1982), and to be placed on a retention register for their former competitive level, *id.* at § 351.404. Goodrich was afforded none of these rights; in fact, his Standard Form 50 states that his "retained grade will not be used for reduction-in-force purposes." Admin.Record at 33. The regulations further provide that an employee "who has been affected by a reduction-in-force action and who believes this part has not been correctly applied" may appeal to the MSPB. 5 C.F.R. § 351.901 (1982). An employee affected by a reduction-in-force thus enjoys numerous procedural protections not available to employees demoted for other reasons.

If Goodrich was demoted as a result of a reduction-in-force, the agency was bound to follow its own procedures in implementing the action. That the agency did not do so is evident from the administrative record in this case. Goodrich was notified of his reduction in grade only three days before its effective date. The memorandum and Standard Form 50 which notified Goodrich of his reduction in grade contained none of the information prescribed by the regulations which govern reduction-in-force actions. He was not given the right to compete for retention of his competitive level, nor was his name placed on a retention register.

The agency concedes that reduction-in-force procedures are entirely different from reductions in grade due to classification changes, *e.g.,* Supplemental Brief at 7. The agency urges instead that because Goodrich failed to raise his reduction-in-force argument before the MSPB, he failed to exhaust his administrative remedies.

 The familiar doctrine of exhaustion requires that a party timely raise his claim in an available administrative forum before seeking judicial relief from any supposed or threatened injury. *E.g., Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 695 (3d Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The primary purpose of the exhaustion doctrine is to permit administrative officials and agencies the opportunity to consider issues and claims and to exercise their discretion before the matter is submitted to the courts. *E.g., Harr v. Federal Home Loan Bank Board,* 557 F.2d 747 (10th Cir. 1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 766, 54 L.Ed.2d 780 (1978). The judicially created doctrine of exhaustion of administrative remedies is not absolute however; it is within the discretion of the court to waive the exhaustion requirement when application of the doctrine would be unjust. *E.g., Cerro Metal Products v. Marshall,* 620 F.2d 964, 970 (3d Cir. 1980); *Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d 231, 245 (3d Cir. 1980); *First Jersey Securities, Inc. v. Bergen,* 605 F.2d at 695; *Bendure v. United States,* 554 F.2d 427, 431 (Ct.Cl.1977); *Athas v. United States,* 597 F.2d 722, 725 (Ct.Cl.1974). In this case, there are circumstances which mandate that the exhaustion requirement be waived. Goodrich was denied the information necessary to effectively prosecute his appeal to the MSPB. He repeatedly testified at the hearing that he was not informed of the nature of the action against him, nor the reasons behind it. The Presiding Official requested documents which, because of inadvertence or other reason, were not disclosed. The MSPB regulations governing its appellate procedure do not provide for discovery by a party; Goodrich had no subpoena power or other compulsory process to aid him in his search for the underlying basis of his downgrade. Under these circumstances, Goodrich can hardly be expected to have exhausted his claim for failure to follow reduction-in-force procedures, since he had no indication that he was, in fact, demoted for that reason. Especially in a

case where the agency, possibly through inadvertence, substantially contributed to the petitioner's failure to exhaust and violated its own regulations requiring that Goodrich be given adequate notice if he was demoted pursuant to a reduction-in-force, we believe that, in our discretion, the doctrine of exhaustion of administrative remedies should not operate as a bar to review of his appeal. *See Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 775 (1st Cir. 1981); *Harr v. Federal Home Loan Bank Board,* 557 F.2d 747 (10th Cir. 1977); *Athas v. United States,* 597 F.2d 722, 725 (Ct.Cl.1979).

The effect of a rigid application of the exhaustion requirement in this case would be to allow a federal agency, through inadvertence or intentional concealment, to neglect to notify an employee that his demotion was the result of a reduction-in-force. Since the MSPB does not have jurisdiction over other types of downward classifications with retained grade and pay, an employee would thereby be precluded from challenging an agency's failure to follow reduction-in-force procedures, and would be denied his right to an appeal. We reject the government's contention that it can rely on the judge-made doctrine of exhaustion, where its failure to follow its own regulations deprived petitioner of the information necessary to pursue his administrative remedies.

Goodrich's contention that he was demoted due to a reduction-in-force requires proof and fact finding and it is proper that the issue be decided by the Merit Systems Protection Board. *E.g., Fucik v. United States,* 655 F.2d 1089, 1095 (Ct.Cl. 1981); *Gratehouse v. United States,* 512 F.2d 1104 (Ct.Cl.1975). Accordingly, we remand to the MSPB for a hearing and decision. If Goodrich pursues his administrative remedies, he has the burden of proving that he was affected by a reduction-in-force and that the MSPB therefore has jurisdiction over his appeal.

### IV.

Thus we will vacate the decision of the MSPB that it had no jurisdiction over Good-

rich's appeal and remand for further proceedings consistent with this opinion.