**Carl ROSE, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF LABOR, Respondent.**

No. 82–3659.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1985.

Decided Sept. 3, 1986.

Michael J. Davenport (argued), Johnson City, Tenn., for petitioner.

Roger Seigel, Marianne Smith (argued), U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for respondent.

Before KENNEDY and KRUPANSKY, Circuit Judges, and EDWARDS, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Petitioner Carl E. Rose (Rose) petitioned for review of the Secretary of Labor's decision refusing to investigate his claim of employment discrimination.

Rose was employed as a foreman for Nuclear Fuel Services, Inc. from October 13, 1980 to November 5, 1981. In October, 1981, Nuclear Fuel Service's equipment malfunctioned and a small amount of nuclear material escaped. Rose informed Nuclear Regulatory Commission investigators that an alarm did not sound at the time of the release because it had been improperly installed. The Nuclear Regulatory Commission imposed a monetary penalty against Nuclear Fuel Services as a result of information Rose provided. Rose's employment was terminated on November 5, 1981, the day after Nuclear Fuel Services received notice of the penalty.

The Energy Reorganization Act of 1974 (the "Act"), 42 U.S.C. § 5851, prohibits an employer from discharging an employee for assisting or participating in a Nuclear Regulatory Commission investigation at the employer's facility. The statute provides that an employee who believes that he had been discharged in violation of the Act may file a complaint with the Secretary of Labor within 30 days of his discharge. 42 U.S.C. § 5851(b)(1).

Petitioner Rose did not become aware of his claim under the Energy Reorganization Act until he consulted with attorney Jack Hodges (Hodges) on December 29, 1981. On December 31, 1981, 56 days after his discharge, Rose filed a claim with the Department of Labor, alleging that Nuclear Fuel Services had unlawfully terminated his employment in violation of the Act. Rose requested that the 30 day limitations period for filing his claim be waived since he had not been informed of his rights under the statute until he met with Hodges.

On September 2, 1982, Labor Administrator William M. Otter (Otter) issued a decision stating that the facts in this case were insufficient to warrant tolling of the 30 day limitations period. Otter's decision did not provide petitioner with notice of his right to an administrative hearing and, accordingly, petitioner did not seek administrative review of Otter's determination.

The Department of Labor has issued regulations establishing procedures for the expeditious handling of complaints under the Energy Reorganization Act. *See* 29 C.F.R. § 24.1 *et seq.* Pursuant to that regulatory scheme, an individual who believes that he has been discharged or otherwise discriminated against in violation of the Act may file a complaint with the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor. 29 C.F.R. § 24.3. Upon receipt of a complaint alleging a violation of the Act, the Administrator is charged with the responsibility of notifying the employer of the charges and investigating and gathering data concerning the case. 29 C.F.R. § 24.4.

The regulation governing notice of an administrator's adverse decision provides as follows:

(d)(1) Within 30 days of the receipt of a complaint, the Administrator shall complete the investigation, determine whether the alleged violation has occurred, and give notice of the determination which shall contain a statement of reasons for the findings and conclusions therein. Notice of the determination shall be given by certified mail to the complainant, the respondent, and to their representatives. At the same time the Administrator shall file with the Chief Administrative Law Judge, U.S. Department of Labor, the original complaint and a copy of the notice of determination.

(2)(i) If on the basis of the investigation the Administrator determines that the complaint is without merit, the notice of determination shall include, or be accompanied by notice to the complainant that the notice of determination shall become the final order of the Secretary denying the complaint unless within five calendar days of its receipt the complainant filed with the Chief Administrative Law Judge a request by telegram for a hearing on the complaint. The notice shall give the address of the Chief Administrative Law Judge.

29 C.F.R. § 24.4(d)(1)–(d)(2)(i). In the present case, the administrator concluded that petitioner's complaint was without merit because it had not been filed within 30 days of the alleged violation as mandated by the Act and because the facts were insufficient to warrant tolling of the 30 day time limitation for filing the complaint. Accordingly, pursuant to 29 C.F.R. § 24.-4(d)(2)(i), the administrator's notice of determination should have included or been accompanied by "notice to the complainant that the notice of determination shall become the final order of the Secretary denying the complaint unless within five calendar days of its receipt the complainant files with the Chief Administrative Law Judge a request by telegram for a hearing on the complaint." The notice given to the petitioner herein was patently defective because it did not contain the information required by 29 C.F.R. § 24.4(d)(2)(i). Accordingly, this court must remand the case to the administrator for issuance of proper notice.

For the reasons set forth above, the case is REMANDED for further proceedings not inconsistent with this opinion.

GEORGE CLIFTON EDWARDS Jr., Senior Circuit Judge, concurring.

I concur with Judge Krupansky's opinion, but feel compelled to write separately in order to highlight some concerns.

The complicated statutory and regulatory scheme enacted by Congress and the Nuclear Regulatory Commission was designed to encourage employees like Mr. Rose to report unsafe practices in one of the most dangerous technologies mankind has invented. It is clear that the NRC envisioned substantial employee involvement in the regulatory process. *See* 10 C.F.R. § 19.11 (posting of notice of employee rights), 10 C.F.R. § 19.12 (mandating

health and safety instructions to employees), 10 C.F.R. § 19.13 (requiring that employees be informed of incidents of radioactive exposure), 10 C.F.R. § 19.14 (allowing employee representatives to be present during NRC inspections), 10 C.F.R. § 19.15 (allowing consultations with employees during NRC inspections), 10 C.F.R. § 19.16 (allowing employees to request NRC inspections).

When amending the regulations, the NRC explained the need for employee involvement:

> The Commission, to effectively fulfill its mandate, requires complete, factual and current information concerning the regulated activities of its licensees. Employees are an important source of such information and should be encouraged to come forth with any items of potential significance to safety without fear of retribution from their employers.

47 Fed. Reg. 30453 (1982).

If employees are coerced and intimidated into remaining silent when they should speak out, the results can be catastrophic. Recent events here and around the world underscore the realization that such complicated and dangerous technology can never be safe without constant human vigilance. The employee protection provision involved in this case thus serves the dual function of protecting both employees and the public from dangerous radioactive substances.[1]

Carl Rose's actions were highly commendable. He acted in the precise manner Congress hoped workers in his position would act. He reported the escape of radioactivity into the atmosphere to the NRC, which took appropriate steps to protect the public from further danger. The next day, Carl Rose no longer had a job. He turned to the government agency charged with protecting his rights, albeit 26 days later

---

1. The United States is not immune to technological malfunction in the nuclear power industry. The NRC recently released a report which listed twelve major failures at nuclear facilities in 1985, including an explosion at a uranium fuel factory in which one worker was killed. Representative Edward Markey, chairperson of the Energy Conservation and Power Subcommittee of the House Energy and Commerce Committee has stated "This past year has been the worst year for nuclear safety in the domestic nuclear industry since the 1979 accident at Three Mile Island." N.Y. Times, May 4, 1986, § 1 at 1.

than the 30 day limitation period, and was met with indifference. The Secretary of Labor, required by his own regulations to respond within 30 days of the complaint, 29 C.F.R. § 24.4(d)(1), took over eight months to reply to allegations of illegal conduct on the part of Rose's former employer.

When the Administrator informed Rose of the adverse determination, he was obliged by regulation to outline the procedure for administrative appeal. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). However, the Administrator apparently did not, as required, notify the petitioner of his right to appeal his decision to the Chief Administrative Law Judge. To attempt to require Rose to exhaust remedies he was not informed of does not promote administrative accuracy, judicial efficiency or agency autonomy. Rather, it would serve merely to compound the errors and lack of concern already amply demonstrated by the Secretary. Those circuits which have decided this issue are uniform in holding that where agency action or inaction prevents an individual from exhausting his administrative remedies, the administrative agency cannot rely upon that individual's failure to pursue administrative remedies as a basis

for precluding judicial review.[2] *Goodrich v. U.S. Department of the Navy*, 686 F.2d 169 (3rd Cir.1982), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985); *Ezratty v. Puerto Rico*, 648 F.2d 770 (1st Cir.1981); *Athas v. United States*, 597 F.2d 722, 220 Ct.Cl. 96 (1979); *Harr v. Federal Home Loan Bank Board*, 557 F.3d 747 (10th Cir.1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 766, 54 L.Ed.2d 780 (1978).

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I would dismiss this appeal because petitioner, Carl Rose, has failed to exhaust administrative remedies by not pursuing a hearing before an administrative law judge.

Both the statutory and regulatory schemes involved in this case require a complainant to request an administrative hearing before the complainant may seek judicial review. Although 42 U.S.C. § 5851(c)(1)[1] gives this Court jurisdiction to review "an order issued under [42 U.S.C. § 5851(b)]," 42 U.S.C. § 5851(b)(2)(A) provides in pertinent part that: "An order of the Secretary shall be made on the record after notice and opportunity for public hearing." Under 29 C.F.R. § 24.7(a) (1985),[2] this Court can review "a final order under § 24.6." The Secretary of Labor, however, can issue "a final order under § 24.6"[3] only after receiving a recom-

---

**2.** In this way, the present case is clearly distinguishable from *Midland Insurance Co. v. Adam*, 781 F.2d 526 (6th Cir.1985). Nor can this case be said to create any dangerous precedent, since waiver of exhaustion must be decided on a case by case basis. *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir.1981).

**1.** Title 42 U.S.C. § 5851(c)(1) provides in pertinent part:

> Any person adversely affected or aggrieved by an order issued under subsection (b) of this section may obtain review of the order in the United States court of appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred....

**2.** Title 29 C.F.R. § 24.7(a) (1985) provides in pertinent part:

> Within 60 days after the issuance of a final order under § 24.6, above, any person adversely affected or aggrieved by such order may file a petition for review of the order in the United States court of appeals for the circuit in which the violation with respect to which the order was issued allegedly occurred....

**3.** Title 29 C.F.R. § 24.6 (1985) provides in pertinent part:

> (a) *Recommended decision.* The administrative law judge shall issue a recommended decision within 20 days after the termination of a proceeding at which evidence was submitted. The recommended decision shall contain appropriate findings, conclusions and a recommended order and be forwarded, together with the record, to the Secretary of Labor for a final order. The recommended

mended decision from an administrative law judge. Since petitioner never requested a hearing before an administrative law judge, we do not have "an order issued under [42 U.S.C. § 5851(b)]" or "a final order under § 24.6."

In this case, William M. Otter, Administrator of the Wage and Hour Division ("the Administrator"), issued a decision that the facts did not justify tolling the thirty-day limitations period in 42 U.S.C. § 5851(b)(1). Although 29 C.F.R. § 24.4(d)(2)(i) (1985)[4] states that the Administrator's "notice of determination shall become the final order of the Secretary" if the complainant does not request an administrative hearing, a "notice of determination" does not become judicially reviewable when it becomes final in effect. Title 29 C.F.R. § 24.7(a) provides for judicial review of "a final order under § 24.6," not "a final order under § 24.6 or § 24.4(d)(2)(i)." In this case, we have a "notice of determination" which has be-

come a final, non-reviewable order because petitioner did not seek an administrative hearing.

This case is distinguishable from this Court's recent decision in *Midland Insurance Company v. Adam,* 781 F.2d 526 (6th Cir.1985). In that case, Midland Insurance Company ("Midland") sought review of a December 31, 1981 order of the Benefits Review Board ("the Board") determining that Midland, rather than Continental Insurance Company ("Continental"), was the responsible insurance carrier for the claimant's permanent partial disability under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901–950.[5] This Court held that since Midland failed to file a petition for review of the subsequent October 27, 1983 decision of an administrative law judge ("ALJ"), the administrative proceedings had not produced a "final order of the Board.[6] Accordingly, this Court granted the motion to dismiss

---

decision shall be served upon all parties to the proceeding.

(b) *Final order.* (1) Within 90 days after receipt of a complaint, the Secretary of Labor shall issue a final order, based on the record and the recommended decision of the administrative law judge, which shall be served upon all of the parties. . . .

4. Title 29 C.F.R. § 24.4(d)(2)(i) (1985) provides:

If on the basis of the investigation the Administrator determines that the complaint is without merit, the notice of determination shall include, or be accompanied by notice to the complainant that the notice of determination shall become the final order of the Secretary denying the complaint unless within five calendar days of its receipt the complainant files with the Chief Administrative Law Judge a request by telegram for a hearing on the complaint. The notice shall give the address of the Chief Administrative Law Judge.

5. An administrative law judge ("ALJ") found Continental liable for the claimant's permanent partial disability from October 12, 1977 until February 20, 1978, and Midland liable beginning June 13, 1978. Midland and the claimant appealed the ALJ's decision to the Board, the claimant contending that he was totally disabled. On December 31, 1981, the Board upheld the ALJ's determination that the claimant was partially disabled and that Midland was responsible for compensating claimant for his permanent partial disability beginning June 13,

1978. The Board, however, vacated the portion of the ALJ's decision concerning the extent of the claimant's permanent partial disability and remanded that issue to the ALJ for further proceedings. The Director, Office of Workers' Compensation Programs, United States Department of Labor ("the Director") filed a petition to review the Board's order in this Court. A panel of this Court dismissed the Director's petition to review the Board's order in this Court. A panel of this Court dismissed the Director's petition finding that that Board's December 31, 1981 decision was not a final and reviewable order because the Board had vacated a portion of the ALJ's decision and remanded the case for further proceedings. On remand, the ALJ entered another decision on October 27, 1983. No party appealed that order to the Board within the thirty-day period allowed in 33 U.S.C. § 921. Midland, however, filed a petition to review the Board's December 31, 1981 order in this Court, within sixty days after the ALJ's October 27, 1983 decision.

6. Title 33 U.S.C. § 921(c) provides in pertinent part:

Any person adversely affected or aggrieved by a final order of the [Benefits Review] Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . .

the appeal. The Court acknowledged that the administrative proceedings ended when the parties did not file an appeal with the Board following the ALJ's decision on remand, but specifically rejected an argument that since no party appealed the ALJ's October 27, 1983 decision, the Board's December 31, 1981 decision became a final, reviewable order.

In refusing to dismiss this case on jurisdictional grounds, the majority creates extremely dangerous precedent. In every case of lower-level administrative action or inaction, when the losing party does not proceed to the next administrative level, the agency's decision becomes final. This does not mean that the losing party is entitled to judicial review wherever or however the matter becomes final. In a social security case, for example, the initial determination of the Secretary of Health and Human Services becomes final if the claimant does not seek reconsideration, and after reconsideration, a hearing before an administrative law judge. Certainly, this Court would not allow claimants who have received an adverse initial determination to appeal directly to the district court or the court of appeals. Yet that is what the majority allows in this case. Although the Administrator's decision in this case became final, in effect, because petitioner did not pursue further administrative remedies, the Administrator's decision is not judicially reviewable without an administrative hearing and a complete administrative record.

Since petitioner failed to exhaust administrative remedies by not requesting a hearing before an administrative law judge, I would dismiss this appeal on jurisdictional grounds.[7] Accordingly, I respectfully dissent.

7. While I express no opinion as to whether petitioner can now request a hearing before an administrative law judge, I note that the Secretary did not comply with 29 C.F.R. § 24.-4(d)(2)(i) because the Administrator did not include notice with the "notice of determination" denying petitioner's complaint that the "notice

of determination" would become the final order of the Secretary unless, within five calendar days of the receipt of the "notice of determination," the petitioner filed, by telegram, a request for a hearing on the complaint with the Chief Administrative Law Judge.